## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVERY DENNISON CORPORATION,<br>207 Goode Avenue<br>Glendale, CA 91203<br><br>   Plaintiff,<br> v.<br><br>NATHAN BROWN<br>137 Cardinal Dr.<br>Lock Haven, PA 17745<br><br>and<br><br>COATING AND CONVERTING TECHNOLOGIES CORPORATION,<br>80 East Morris Street<br>Philadelphia, PA 19148,<br><br>   Defendants. | Civil Action No. |

## VERIFIED COMPLAINT

Plaintiff, Avery Dennison Corporation ("Avery Dennison"), brings this action against Defendants, Nathan Brown, and Coating and Converting Technologies Corporation ("CCT"), and alleges as follows:

### Nature of Action

1. This dispute arises from Mr. Brown's breach of a valid non-competition and confidentiality provision of an Employment Contract in accepting employment in competition with Avery Dennison. Mr. Brown spent nearly a decade in Avery Dennison's employ developing new specialized adhesives for particular customer applications, identifying appropriate existing adhesives to meet customer project needs, and troubleshooting related customer issues.

2. Mr. Brown left Avery Dennison for a technical service engineer position with CCT. CCT is a specialty tape manufacturer that produces adhesive tapes in all major categories of tapes. Per the description that he provided to Avery Dennison, Mr. Brown's position with CCT includes working with internal sales teams and customer technical teams to meet customer needs, as well as managing CCT's product enhancement projects. The role also includes conducting applied research and product and process development in support of new and existing products.

3. Fulfilling his new employment responsibilities will necessarily require Mr. Brown to utilize his knowledge, skills, and information regarding the strategic formulation and application of specialized adhesives and other trade secrets and confidential information gained through his employment with Avery Dennison.

4. Defendants' failure to abide by the Employment Contract violates the Pennsylvania Uniform Trade Secrets Act and the Defend Trade Secrets Act.

5. Plaintiff seeks an order for injunctive relief to prevent Mr. Brown from beginning and/or continuing employment for CCT.

**Parties**

6. Avery Dennison is a global manufacturer and distributor of adhesive materials and products that utilize adhesive materials. Avery Dennison's products include pressure-sensitive materials for labels and graphic applications; tapes and other bonding products for industrial, medical and retail applications; tags, labels and embellishments for apparel; and radio-frequency identification (RFID) solutions serving retail apparel and other markets.

7. Avery Dennison is a corporation formed under Delaware law, with its corporate headquarters and principal place of business located in California. Avery Dennison is a corporate citizen of Delaware and California for diversity purposes.

8. Nathan Brown is an adult individual who resides in Pennsylvania, and is a citizen of Pennsylvania for diversity purposes.

9. CCT is a corporation organized under Pennsylvania law, with its principal place of business located in Philadelphia, Pennsylvania. CCT is a corporate citizen of Pennsylvania for diversity purposes.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction exists under 28 U.S.C. § 1332 in that Avery Dennison and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

11. This Court also has original jurisdiction of this action under the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

12. Venue is appropriate in this District because one of the Defendants is located in this District, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

13. Avery Dennison employed Mr. Brown beginning in June of 2011.

14. During his tenure with Avery Dennison, Mr. Brown worked as a Research Technician and later an Applications Development Chemist with Avery Dennison's Performance Polymers division.

15. Mr. Brown's duties entailed supporting Performance Polymers customers on technical matters, developing new adhesives through formulation, identifying current adhesives to meet customer needs for particular applications, managing projects with customers and Avery Dennison operations, troubleshooting customer issues at the customer site and through coordinating work in the Avery Dennison labs in Mill Hall, Pennsylvania, and assisting the

Performance Polymers commercial team in identifying opportunities and threats to Avery Dennison's business. Through his work with Avery Dennison, Mr. Brown gained particular expertise in the composition and capabilities of acrylic adhesives, how such products may be suitable for particular application substrates and other conditions, and the selection, formulation, and modification of such products to meet particular customer needs.

16. On June 15, 2011, Mr. Brown entered into an Employment Contract with Avery Dennison. The Employment Contract includes provisions regarding confidentiality, and a restrictive covenant prohibiting future competitive employment within a reasonable scope and duration. A true and correct copy of the Employment Contract is attached hereto as Exhibit "A".

17. Mr. Brown's Employment Contract with Avery Dennison provides that he will not directly, indirectly, or inevitably use or disclose any Confidential Information. Confidential information was defined as:

> "any Avery Dennison information or material that is not generally known by the public, including but not limited to, information or material relating to: trade secrets, products, manufacturing, engineering, processes, research, development, tests, specifications, methods, strategies, capabilities, know-how, vendors, suppliers, finances, accounting, audits, computer and electronic systems, computer software and hardware, customers, marketing, sales, services, prices, costs, employees, liabilities, third party information shared with Avery Dennison under confidentiality agreement, and any other technical, financial or business information existing or developed at any time that provides Avery Dennison with a competitive advantage."

See Exhibit A, Paragraph 2.

18. The knowledge, training, experience, and know-how described above fall squarely within the definition of "Confidential Information" in the Employment Contract.

19. In addition to the confidentiality provision, the contract also precludes Mr. Brown from engaging directly or indirectly in "Competitive Employment" for two years after his employment with Avery Dennison ceased. Competitive Employment was described as "any

non-Avery Dennison position" requiring that Mr. Brown directly or indirectly provide services for an entity "that is intending or attempting to become engaged in, the research, development , manufacture, sale, service, or supply of any product, proves, or service substantially similar to or competitive with any product, process, or service" on which Mr. Brown worked or obtained any confidential information during the last two years of his job with Avery Dennison. See Exhibit A, Paragraph 6.

20. The Employment Contract also includes a remedies provision whereby Mr. Brown agreed that a breach of the Employment Contract would result in irreparable harm to Avery Dennison because monetary damages in a legal proceeding may not be sufficient to remedy the harm. Mr. Brown agreed further that Avery Dennison had the right to "seek preliminary, temporary, and permanent injunctions in order to enforce this Agreement." See Exhibit A, Paragraph 12.

21. On September 5, 2019, Mr. Brown submitted a written request that Avery Dennison release him from the non-competition obligations of his Employment Agreement, or confirm that his proposed employment with CCT would not conflict with his obligations to Avery Dennison.  A true and correct copy of the request is attached hereto as Exhibit "B".

22. Mr. Brown represented in the request that his new position at CCT would not be a competitive threat to Avery Dennison. According to Mr. Brown, his new role, which dealt with tape manufacturing, would not be in violation of the non-competition agreement because while at Avery Dennison, Mr. Brown did not become privy to any confidential information regarding Avery Dennison's Performance Tape Division.

23. Mr. Brown's new title at CCT is Technical Service Engineer. The job description provided by Mr. Brown states that he will work

"closely with the sales team to ensure customer needs are met and new opportunities are developed. Project manager for internal projects (e.g. raw material substitution and product enhancements) and customer requests. Interacts with [CCT's] customers' technical teams to support sale growth and customer satisfaction. Conducts applied research and product/process development in support of new and existing products at the laboratory, pilot scale, and manufacturing plant environment."

See Exhibit B.

24.     CCT is a direct competitor of Avery Dennison in various business units, including but not limited to, tapes, medical products, and graphics. All of these products use specialized adhesives and other current or future products that would use such adhesives. A true and correct copy of CCT's general description is attached hereto as Exhibit "C".

25.     Mr. Brown worked for Avery Dennison for over eight years. Within that time, he received extensive training and experience in the development and utilization of specialized acrylic adhesives for various customer applications, in identifying appropriate existing adhesives to meet customer project needs, and in troubleshooting related customer issues. Put differently, Mr. Brown received specialized knowledge, training, and experience regarding what acrylic adhesives to use in combination with different substrates in particular customer applications, and how to develop new adhesives to meet particular applications for which already-available adhesives were insufficient.

26.     Further, as part of Mr. Brown's employment he had access to Avery Dennison's confidential customer lists, marketing and sales strategies, and operational techniques.

27.     The knowledge, training, and know-how gained by Mr. Brown at Avery Dennison, as described above, derives independent economic value from not being generally known to Avery Dennison's competitors. As indicated by the restrictions of the Employment Agreement, Avery Dennison takes reasonable measures to maintain the confidentiality of such information.

28. The knowledge, information, and experience that Mr. Brown gained at Avery Dennison were trade secrets and confidential information that could easily be tasked to the improvement of CCT's existing competitive products and future development of additional such products.

29. Mr. Brown's prospective employment with CCT necessarily requires him to, among other things, consider the particular application requirements of CCT's customers, determine what adhesive products (either among CCT's existing inventory, in the marketplace, or through formulation of custom products) best match prospective tape materials (i.e., the paper, plastic film, cloth, foam, foil, or other substrate) to provide the best tape solution for the particular surface application to suit the needs of CCT's customers.  This directly competes with Avery Dennison's Performance Tapes business as well was the medical products business, and could easily compete with additional of Avery Dennison's lines of business should CCT expand its operations.

30. Avery Dennison reminded Mr. Brown of his post-employment obligations under the Employment Contract when he resigned. A true and correct copy of the letter to Mr. Brown is attached hereto as Exhibit "D".

31. Avery Dennison notified both Mr. Brown and CCT that his anticipated employment with CCT violated the Employment Contract.

32. In response to Avery Dennison's objections, CCT placed Mr. Brown in a non-substantive role while the parties attempted to negotiate an acceptable resolution.  Those negotiations did not succeed, necessitating this litigation.

**Count I - Injunction**

**Plaintiff v. Defendants Brown and CCT**

33. Avery Dennison incorporates by reference the averments of the previous paragraphs as if fully set forth herein.

34. Mr. Brown's conduct constituted a breach of contract and a misappropriation of trade secrets in violation of Pennsylvania's Uniform Trade Secrets Act (the "Act") and the Defend Trade Secrets Act ("DTSA").

35. CCT's conduct constitutes misappropriation of trade secrets in violation of the Act and DTSA.

36. By virtue of the forgoing, Avery Dennison has demonstrated a likelihood of success on the merits of its claims, and that a balancing of the equities favors the issuance of an injunction against the Defendants.

37. Avery Dennison notified both Defendants that the planned employment would violate the Employment Contract.

38. Avery Dennison is entitled to injunctive relief against both Defendants because there will be irreparable harm to Avery Dennison should Defendants disclose and/or use Avery Dennison's confidential information and trade secrets. Avery Dennison will be irreparably harmed by:

(a) The transfer, via Mr. Brown's employment by CCT, of Avery Dennison's proprietary formulations and know-how regarding the formulations and applications of existing adhesives to customer and product applications, and the means and methods of creating new adhesives;

(b) The disclosure of Avery Dennison's customer lists, trade secrets, and other confidential information;

      (c)      Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients;

      (d)      The threat to the enforcement of reasonable contracts between Avery Dennison and its employees;

      (e)      Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

39. The losses that will be suffered by Avery Dennison as a result of Defendants' actions cannot be fully or adequately compensated in money damages, and Avery Dennison does not have an adequate remedy at law.

40. Greater injury will be inflicted upon Avery Dennison by the denial of relief than would be inflicted on Defendants by granting such relief.

41. Injunctive relief would be consistent with public policy and in the public's interest, in that it is both necessary and reasonable to protect Avery Dennison's legitimate interests in its trade secrets and confidential information.

**WHEREFORE**, Avery Dennison respectfully requests that the Court issue a temporary restraining order and preliminary injunction enjoining Mr. Brown from commencing his employment at CCT until a hearing and thereafter until further Order of this Court.

### Count II - Breach of Contract

### Plaintiff v. Defendant Brown

42. Avery Dennison incorporates by reference the averments of the previous paragraphs as if fully set forth herein.

43. Avery Dennison and Mr. Brown entered into an Employment Contract. Contained within that Employment Contract was a confidentiality and non-competition requirement. See Exhibit A, Paragraph 6.

44.     The written Employment Contract is signed by both Mr. Brown and an authorized representative of Avery Dennison. <u>See</u> Exhibit A.

45.     The Employment Contract was supported by adequate consideration, namely, an offer of employment from Avery Dennison to Mr. Brown, with all attendant salary, benefits, and severance pay. <u>Id.</u>

46.     As described above, Mr. Brown is now working for a competitor, CCT. Mr. Brown's employment with CCT will involve engaging in competitive activities against Avery Dennison by soliciting business from Avery Dennison customers and potential customers, and using and/or disclosing Avery Dennison's Confidential Information and trade secrets for the benefit of himself and CCT.

47.     These actions constitute multiple breaches of the Employment Contract, including but not limited to breaches of Paragraphs 2 and 6 of the Employment Contract.

48.     As a direct result and consequence of these breaches by Mr. Brown, Avery Dennison will incur damages.

**WHEREFORE**, Avery Dennison seeks injunctive relief and damages to be determined at the time of trial. In addition, as anticipated under the Employment Contract, Avery Dennison requests costs, interest and attorneys' fees, and such further relief as the court may deem appropriate.

## **Count III - Misappropriation of Trade Secrets - Pennsylvania Uniform Trade Secrets Act**
### **Plaintiff v. Defendants Brown and CCT**

49.     Avery Dennison incorporates by reference the averments of the previous paragraphs as if fully set forth herein.

50.     Avery Dennison owned and possessed certain confidential, proprietary, and trade secret information, as alleged above.

51. Avery Dennison's Confidential Information constitutes trade secrets under the Pennsylvania Uniform Trade Secrets Act (12 Pa. C.S. § 5301, *et seq.*).

52. Avery Dennison has made a substantial investment of time, effort, and money into creating and maintaining its Confidential Information and trade secrets for its business, and has taken reasonable measures to keep such information secret, and to protect it from public disclosure.

53. Mr. Brown was privy to Avery Dennison's confidential customer lists, marketing and sales strategies, and operational techniques. The information and experience that Mr. Brown received at Avery Dennison can easily be tasked to further Avery Dennison's direct competitor, CCT, in improving its existing competitive products, future development, and additional products.

54. By virtue of his Employment Agreement, Mr. Brown knew that he was expected and required to keep the trade secret information confidential. However, Mr. Brown obtained with CCT, where those trade secrets will by necessity be directly or indirectly used in the course of business.

55. CCT was notified of the Employment Contract, and still chose to employ Mr. Brown.

56. Avery Dennison did not consent to the use of its Confidential Information and trade secrets. In fact, Avery Dennison demanded that both Defendants refrain from engaging in such conduct.

57. Defendants' conduct has been willful and outrageous without regard to the substantial damages to Avery Dennison.

**WHEREFORE**, Avery Dennison seeks injunctive relief and damages to be determined at the time of trial. In addition, Avery Dennison requests costs, interest and attorneys' fees, and such further relief as the court may deem appropriate.

## Count IV - Misappropriation of Trade Secrets – Defend Trade Secrets Act
## Plaintiff v. Defendants Brown and CCT

58. Avery Dennison incorporates by reference the averments of the previous paragraphs as if fully set forth herein.

59. Defendants violated the DFSA (18 U.S. Code § 1836).

60. As set forth above, CCT cannot employ Mr. Brown in his anticipated role without utilizing Avery Dennison's trade secrets. Such use would constitute a misappropriation of Avery Dennison's trade secrets. Those trade secrets are related to a service that is intended for use in interstate commerce.

61. Given the nature of the skills and information that Mr. Brown obtained with Avery Dennison, which presumably are what made him an attractive candidate for CCT, and Avery Dennison's efforts to address the situation with CCT short of litigation, Defendants' misappropriation of Avery Dennison's trade secrets is willful and malicious.

62. Avery Dennison is entitled to damages and attorney's fees due to such willful and malicious appropriation of Avery Dennison's trade secrets.

63. Avery Dennison is entitled to damages for all actual loss and unjust enrichment of Defendants caused by misappropriation of Avery Dennison's trade secrets.

**WHEREFORE**, Avery Dennison seeks injunctive relief and damages to be determined at the time of trial. In addition, Avery Dennison requests costs, interest and attorneys' fees, and such further relief as the court may deem appropriate.

Respectfully Submitted,

By: *[signature]*
Eric E. Reed
Trisha B. Stein
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Facsimile: (215) 299-2150
Email: ereed@foxrothschild.com
tstein@foxrothschild.com

*Attorneys for Plaintiff*

Date: October 8, 2019

## Verification

I am authorized to provide this Verification on behalf of Avery Dennison Corporation. I hereby verify that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties of relating to unsworn falsification to authorities.

_____
James Akeley
Avery Dennison Corporation

Dated: October 8, 2019